CELIA ALTHOLZ, Plaintiff, *v.* MORRIS ALTHOLZ, Defendant.

Supreme Court, Trial Term, Queens County, February 3, 1955.

*Husin, Miller, Edgar, Levy & Davis* for plaintiff.

*Irving Kaufman* for defendant.

CONROY, J. The plaintiff was married to the defendant in 1921, and two children were born of the marriage. On February 17, 1947, the defendant obtained a decree of divorce from the plaintiff. On September 12, 1947, the parties entered into an agreement whereby, among other things, the defendant agreed to pay to the plaintiff the sum of $15,000 in installments which has been paid, and to pay her the sum of $50 per week and $60 per month, which payments were to continue " during her lifetime or until she remarried." On July 10, 1949, the plaintiff

married Carl Brigg and lived with him until March, 1951, when she commenced an action to annul that marriage. On June 25, 1951, the plaintiff and Carl Brigg entered into an agreement whereby the plaintiff abandoned all rights to counsel fees, necessaries and support. A judgment annulling the marriage between plaintiff and Carl Brigg was entered on August 16, 1951. In his examination before trial, the defendant stated that the last $50 payment was made to the plaintiff on June 25, 1949, and the last $60 payment was made on June 2, 1949.

The plaintiff sues to recover for two payments of $50 each and the sum of $60 which she claims became due prior to her marriage to Carl Brigg and for all payments due from November 15, 1951, the date when the annulment of her marriage to Carl Brigg became final, up to January 30, 1954, when the plaintiff again remarried.

This case is controlled by *Gaines* v. *Jacobsen* (283 App. Div. 325, affd. 308 N. Y. 218), where a very similar situation was decided. In the cited case, as here, the plaintiff, after obtaining an annulment of her second marriage, sought to revive rights against an ex-husband under a pre-existing separation agreement which provided that, upon her remarriage, the benefits thereunder should cease. In barring any claim on the agreement, the court, at page 326, stated: '' The judgment, in our view, should be reversed on the ground that although the wife's remarriage was annulled and is therefore null and void from its inception for many purposes, it was nevertheless, for the purpose of construing the separation agreement under which the wife claims, sufficient to terminate the obligations of the husband under it.'' In distinguishing the *Gaines* decision from the decision in *Sleicher* v. *Sleicher* (251 N. Y. 366), the court said, at page 331: '' We turn now to another aspect of this case. When the *Sleicher* case was decided it was not possible for a wife who had obtained an annulment to obtain support from the husband adjudged a wrongdoer. The principle that a voided marriage was erased legally was without exception in the statute law, except as to the children of the voided marriage. The law has since been changed. Section 1140-a of the Civil Practice Act now authorizes a direction, if justice requires it, for the support of the innocent wife.''

Furthermore, having made a voluntary choice to absolve Brigg from any obligation to support her, the plaintiff may not now claim that the defendant intended that payments would be resumed upon the termination of the second marriage. Again citing from the *Gaines* decision at pages 330–331: '' It makes

neither sense nor reason nor is it good policy that the husband should stand ever ready to support the wife, insuring her maintenance should she, with full knowledge of the facts, but confused or misled by the vagaries of matrimonial law, discard or be discarded by a second husband because of legal infirmities in the remarriage. Suppose a husband, divorced, and now relieved of duty to support his divorced wife because of her remarriage, himself remarries? Suppose he has children by his second marriage? Suppose he drops the life insurance he had agreed to maintain for the first wife until she remarries? Must he now restore it, if he can, at a higher rate of premium? Suppose the husband retires from active work once his divorced wife remarries, believing that he has only himself and his children to support? ''

The fact that in the instant case the plaintiff's second marriage resulted in an annulment instead of a divorce as in the *Sleicher* case (*supra*), does not change the construction to be given the agreement. It terminated upon the remarriage of the plaintiff.

It is the plaintiff's contention that the $60 monthly payment which the defendant agreed to make was support of a child of the marriage. With this view, I cannot agree. The monthly payment was in the same category as the weekly payment, maintenance for the plaintiff. This is so, especially in view of the plaintiff's agreement to assume all obligations for the support, maintenance and education of the child.

With regard to the cessation of payments made by the defendant, it would seem that the plaintiff is entitled to recover the $50 payment due on July 2, 1949, and the $50 payment due on July 9, 1949, which are the two weeks between the defendant's last payment and the plaintiff's second marriage and one $60 payment inasmuch as the last one made was on June 2, 1949.

Accordingly, the plaintiff may have judgment against the defendant in the sum of $160.